The President
delivered the opinion of the Court.
The material parts of the agreed case are, that James Garnett by will, devised the estate in question to his son James for life, remainder to his son Muscoe in fee, in trust, for the use of the first and every other son of James who should survive him in tail male, equally to be divided; but if James should die without issue male, then he gave the land to Muscoe for life, with like remainders to his first and every other son who should survive him, in tail male, equally to be divided; but if Muscoe should die without issue male, then in trust for three grandsons and their surviving sons, in tail male, equally to be divided, remainder to his son Muscoe in fee.
After having disposed of his slaves and other property to his children and grandchildren by the different clauses of his will, he declares, that their respective wives should be entitled to dower. The testator died before the year 1776.
James survived that period, never having had a son, but leaving a daughter his heir at law, under whom the appellants claim, insisting that James took an estate tail, under the u ill, which by the Act of 1776, was turned into a fee simple, which descended to his heir.
The appellee contends, that James took an estate for life only, on which the Act did not operate, and *39 that the contingent remainders limited upon that es= tate, being at an end, the remainder to him is become vested In possession,
The conclusion of each party is sight from his premises, and brings us to the question, which of those estates James took, whether for life or in tail ?
Upon the face of the will itself, difficulties arise, what was the testators intention ? As usual therefore, authorities are produced, for the purpose of illustrating, or of controuling it ; multifarious indeed, but in general unsatisfactory; containing rules of construction, as well as principles and reasoning from them by different Judges, in many cases obscure and contradictory.
In bringing these into review, the gentlemen of the bar, on both sides, have ably discharged their duty, In giving the Court full information on this complicated subject.
That the testators intention is to be the general rule of construction, ivas laid down soon after the Statute of Wills, It has never been contradicted, but is amplified rather than- restrained in all subsequent instances.
The exception to this rule, u that he shall not be ‘ allowed to control or change settled principles of law9 as established by the Judges/* seems to be as fixed as the rule itself.
But another exception,, that the intention shall not Interfere with the established rules of construction, which Judge Blackstone states, as of a flexible nature, has produced, in its application, a variety of reasons and decisions, which I am not able to reconcile, and therefore am inclined,, as I always have been, to look to the will itself, and not to those unsettled rules of construction.
That the testator intended to devise an estate for life to James, could not be made more manifest than from the will itself, if confirmed by one from the dead, even if that were the testator himself.
But if a subsequent part of the will shews a maní»' fest intention, though not so strongly expressed, to *40 provide for all the male issue of James, and both intentions cannot stand, that of the devise for life must yield to the other, which is supposed to be most important in the testator’s mind.
Cases may be classed into those, where the conflict of intention arises from express devises in the will, and those, where they are to be impliedfrom what is expressed. To the first sort, the case of King v. Melling applies. A devise to A. for life, remainder to the issue of his body by a second wife, remainder over; A. was adjudged to take an estate in tail, as the only means of providing for the issue, who could not take as purchasers, not being in esse, and could only take through the ancestor; and for that purpose, the estate for life was turned into an inheritance according to the rule in Shelley’s Case. This case is constantly referred to, in most, if not in all subsequent cases, and its principle, as well as its authority, is no where denied.
In questions of this sort, it has been thought a circumstance of considerable weight, that issue must be taken as a word of limitation, where no words of inheritance are superadded in the devise, because in such a case, if the isue take by purchase, they would only take an estate for life. From hence a distinction has arisen, that where words of inheritance have been superadded in the devise to the issue, the issue has been adjudged to take by purchase, so as not to enlarge the estate of the ancestor; and this was Archer’s Case, 1 Rep. 66, and in several cases since. But in others it has been decided not to have produced that effect, and the point has been determined upon another circumstance, to wit, that of the issue being in esse, at the death of the testator or of the tenant for life, or within a reasonable time after; as in the case of a devise to the heirs of I. S, who is living. And under this distinction the parties have rightly agreed, that the devise to the surviving sons did not enlarge the estate for life in James, since the surviving sons not only might, but must take as purchasers, being t© take, not in succession, but as tenants in common. *41 The part of each son would descend to Ills male issue, which would thereafter go in succession m tail male . to the eldest son, and would not, (as the appellee’s counsel supposed,) continue to go in common to all future generations. So far then the estate for life is preserved, being consistent with the other intention to provide for surviving sons.
But the difficulty results from the testator’s being supposed to have devised the land to his male issue, upon the contingency of his having no surviving sons, which it is said, he manifestly intended, from having given oyer the estate to Muscoe, upon the death of James without male issue, thereby shewing that he did not intend Muscoe to take the land, so long as there were any male descendants of James. We come therefore to the second class of conflicting intentions, not collected from express devises to the issue, but to be implied from what is expressed; on which subject there are a number of cases, the decisions in which are extremely various, and sometimes contradictory. But the most prevailing rule seems to be, that an express devise for life is not to be changed into an estate of inheritance by implication, unless that implication be a necessary one, because the testator’s intention, to be collected from the whole will, cannot otherwise be effectuated. To take up the present case on this mle. If there be any apparent intention to provide for the issue male of James, in case there were no surviving sons, or In case their male issue should fail, it is evident, such provision, (if the case happened) could no otherwise take effect, than by a descent from James¡ and by that means changing his estate for life into an estate tail, thereby producing that sort of necessity, which will admit a devise, even by implication, to control an express devise.
The case, furnished by the will, of a chasm between the provisions for part of the issue of James,, and the limitation over upon the failure of his whole male issue, though uncommon, Is not new. The case of Langley v. Baldwin seems to apply directly to it. There, the testal- -r gave to his grandson an estate for life, without *42 impeachment of waste, and with power to make a to his wife for life, and after his death, devised to his six sons, one after another, in tail, and made provision for no other sons; but added, that if his grandson should die without issue male, the estate should go over. It was adjudged, that from the express limitation over, the testator intended to provide for all the issue male of his grandson, although they should not be one of the six; and as that could not be effected any other way than by descént from the grandson, the Court adjudged him to take an estate tail, .though expressly given for life. .
The same thing was done in the case of The Attorney General v. Sutton, where a provision was made for two sons only of the tenant for life, with a limitation over upon his dying without is.sue male of his body. Here then are two according decisions, which apply to the case at bar in terms, and in principle, and if not contradicted, must be considered as fixing a rule of property. The case of Popham v. Bamfield is produced in opposition to those I have just mentioned. That was a devise to Popham for life, remainder to his first, &c. son successively in tail male, and for want of issue male of Popham, remainder over.
An attempt was made to bring this to the former cases, by supposing that there was a chasm between the provision for the sons, and the limitation over, and this could only happen, and might happen, in the case of a posthumous son, who it was said could not take under the provision. Whether he could or could not is immaterial. The answer which the Court gave was, that though it might have been intended that such posthumous son should take, yet the testator was herein mistaken as to the law, or he might not consider of it, being a remote mischief, or contingency, and therefore supposing he had made provision for all the sons of the tenant for life, his intention might be complied with, without enlarging the estate for life, and both intentions might be preserved. Without taking notice, that this case, being produced after-wards in the case of Blackborn v. Edgley, the Court *43 Is said to have exploded the notion, that words of implication should not turn an express estate for life an estate tail, I observe, that the case in principle does not contradict the former cases, being unlike them in this, that in that, all the sons are provided for. This curious case may happen ; Muscoe Gar-nett takes this estate in remainder, as well as all the lands devised immediately to himself, in the same manner as James did, if he has several sons, and they should marry, it may happen, that all of them may die in his life time, and some, if not all of them, leave sons, and his whole estate may go over in remainder from his grandsons, upon the principle he now con - tends for, that an implied remainder to the male issue shall not be admitted. This possibility give a striking proof of the impropriety of departing from established rules of construction.
An objection is then made, that the intervening bequest to the surviving sons, between the devise for life, and that to the issue by implication, prevents the union of the two last mentioned devises. The rule in Shelly’s Case enlarges the estate for life, into an inheritance, where the devise to the heirs or issue is mediate or immediate; the former describes the case of the present devises. In Fearne on Contingent Remainders,. 25, it is said, that the only difference between the limitation being mediate, or immediate Is, that in the latter case, the tenant for life takes an estate tail in possession, and in the former, he takes the estate tail in remainder, dependent upon the determination of the intermediate estate. So that this objection seems to have no weight.
Another point made was, that under the implied limitation to the male issue, they might take as purchasers, since they were to take, not in succession in tail, but as tenants in common, in the same manner as the surviving sons were to take. This has been mentioned before, not to have been the testator’s intention, or if it had, it was controled by one of the rules of law, stated to be inflexible, to wit; that a testator could not make his land descend to all his sons, in» *44 stead of the eldest. So that upon the whole, it seems to me, that if there were nothing more in this case than the point which has been noticed, the Court would be compelled to adjudge, that James took an estate tail in remainder, expectant upon the determination of the estate tail to the surviving sons. But though I am well satisfied in this opinion, some of the other Judges doubt about it, and we thought it unnecessary to decide that point, since admitting that James took such an estate tail in remainder, we are all of opinion against the appellant upon two remaining points.
The first depends upon the devise to the trustee,, The trust commences at the death of James, so as not to include the estate for life devised to him; it comprehends the contingent remainders to the surviving sons, and to their male issue, and the implied remainder to the male issue of James. Perhaps it goes farther, and extends to all the subsequent remainders, since, after the estate for life to Muscoe, a further trust is declared, without naming a new trustee, or without a devise to such new trustee. The legal estate in fee therefore, in trust for the surviving sons in tail male, interposes between the estate for life of James, and the implied remainder to his male issue, which is supposed to enlarge the former into an estate tail.
To admit that effect, and to describe the whole interest which James took in the lands, he was tenant for life in possession, with remainder in tail male, expectant upon the determination of the estate tail devised to his surviving sons. And we come to consi der, what operation the Statute of Uses will have on this estate, under the devise to the trustee.
The Statute gives the legal estate to him that hath the use, so that there must be an use, before the Statute can operate upon it
In Powell on Devises, 283, it is said, that as to per sons in esse, the legal estate is executed immediately; and as to persons not in esse, it vests immediately upon their coming into being, if they come in good time, otherwise it goes over to the next remainder *45 man. To apply this. Here was a trust for surviving sons, and for male issue not in esse, and who never same into being, it being stated, that James never had a son in whom either use could vest. The^ood time therefore, for them to come into esse, was expired at the death of James, and the estate either remained in Muscoe, as the trustee, (the trust not being executed by the Statute, but remaining at common law,) or the estate passed over to him as the next remainder-man, either of which defeats the appellants title.
But then a question arises upon the Act of 1776, whether this was such an estate tail in James, as wan by the act turned into a fee simple.
The act operates upon all estates tail in possession, and those in reversion or remainder, after the determination of an estate for life, or lives, or of any lesser estate. James’s estate has been described as an estate tail in remainder, after the determination of a preceding estate tail. It was therefore a greater estate than for life or lives, and consequently not within the operation of the act, so as to defeat the remainder to Muscoe, now to take effect, as there are neither su;: viving sons^ nor male issue in his way.
So that upon these two grounds to wit, first, that the estate at law remained in the trustee for want of a person coming into esse in whom the use could vest, or when that event was become impossible, passed over to Muscoe as the next remainder-man, and first cestui que use in esse,.
Secondly. That James being seised of an estate tail in remainder, after the determination of a prior estate tail, is not such a tenant in tail, whose estate is to be changed into a fee simple by the Act of Assembly of 1776’
The law therefore is in favor of the appellee, and the judgment of the District Court is to be affirmed.([1])

(1) Smith v. Chapman, 1 Hen, & Munf, 24,0. 296. Sleighs v. Strider 3 Hen. & Munf. 299, note.